**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Christopher Jason DETMAN,**
**Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 20, 2001.
Filed March 9, 2001.

Robert A. Crisanti, Pittsburgh, for appellant.

Sandra Preuhs, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before EAKIN, STEVENS and OLSZEWSKI, JJ.

STEVENS, J.:

¶ 1 This is an appeal *nunc pro tunc* from the judgment of sentence entered in the Court of Common Pleas of Allegheny County following Appellant's conviction on the charges of corruption of minors and criminal conspiracy. On appeal, Appellant contends that a new trial/evidentiary hearing is warranted due to after-discovered evidence. Specifically, Appellant contends that, after Appellant's trial, Darrell McKrell recanted his trial testimony. We affirm.

¶ 2 The relevant facts and procedural history are as follows: On November 1, 1997, Rick D. McCullough called the police because he saw someone stealing his 1985 green Camaro. The police responded, stopped the Camaro, found McKrell in the driver's seat and John Mainhart, a juvenile, in the passenger's seat. McKrell told the police that, on October 31, 1997, he, Mainhart, and Appellant were drinking beer, which was provided by Appellant, when they decided to steal McCullough's Camaro. The trio agreed that McKrell and Mainhart would steal the car and then drive around the corner to pick up Appellant.

¶ 3 Appellant was arrested, charged with various offenses, and proceeded to a jury trial, during which McKrell told the jury about the conspiracy at issue. Appellant was convicted on September 3, 1998, of corruption of minors and criminal conspiracy, and, on October 19, 1998, Appellant received an aggregate sentence of one and one-half years to seven years imprisonment.

¶ 4 In January of 1999, Appellant filed a petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541 9546, requesting that his direct appeal rights be reinstated. The PCRA court granted Appellant's request and this timely appeal followed. The trial court ordered Appellant to file a Statement pursuant to Pa.R.A.P.1925(b), Appellant filed the required Statement raising the issue presented on appeal, and the trial court filed a Pa.R.A.P.1925(a) Opinion.

After-discovered evidence can be the basis for a new trial if it: (1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted. *Commonwealth v. Williams,* 537 Pa. 1, 25, 640 A.2d 1251, 1263 (1994) (citation omitted). "Unless the trial court has clearly abused its discretion in denying a new trial on the basis of after-discovered evidence, its order will not be disturbed on appeal." *Commonwealth v. Cull,* 455 Pa.Super. 469, 688 A.2d 1191, 1198 (1997) (citation omitted). Moreover, the kind of evidence at issue here, an alleged recantation and admission of perjury, has often been recognized as one of the least reliable forms of after-discovered evidence. *Commonwealth v. McNeil,* 506 Pa. 607, 617 n. 4, 487 A.2d 802, 807 n. 4 (1985).

¶ 5 Here, as indicated previously, Appellant contends that, after his trial, the Commonwealth's main witness, McKrell, told Appellant's brother that he had lied at trial about Appellant's involvement in the con-

spiracy. To support his contention, Appellant has attached to his brief an affidavit from his brother.

¶ 6 During trial, defense counsel argued that McKrell's testimony should not be believed and that Appellant did not conspire to steal the Camaro at issue. Specifically, during cross-examination, the following exchange occurred between defense counsel and McKrell:

Q: What would you say to Mr. Mainhart if he took the stand and called you a liar, said you were the one that cooked up the plan?

A: I'd say the same thing he's saying, he's lying.

Q: You'd say he's ... well, he is going to take the stand. We are going to have the opportunity to listen to his testimony. What if, Mr. McKrell, I put another witness on the stand to testify that you admitted to them that you were the person that stole this gentleman's car a week and a-half before this?

        ✢        *        *

Q: What would you say to that witness? Would you call him a liar, too?

A: Yeah.

N.T. 9/3/98 at 29–30.

¶ 7 In addition, during re-direct examination, the following exchange occurred between the prosecutor and McKrell:

Q: Mr. McKrell, [Appellant] threatened ... per the cross-examination he threatened you, if you told anyone you'd get hurt?

A: Yeah.

Q: What happened after you gave the statement to the police?

A: About a week after that him and his brother and cousin jumped me at Mainhart's house.

Q: At Mainhart's house? Did you get injured?

A: Not really.

Q: Did you get hit?

A: Yeah, I got hit. I didn't get hurt. N.T. 9/3/98 at 37–38.

¶ 8 On re-cross examination, defense counsel asked McKrell why he did not testify that he was afraid of Appellant and his brother and that Appellant and his brother had threatened him. McKrell testified that he was afraid to say anything during the preliminary hearing, but he decided to tell the court about the threats because he was "living in constant paranoia." N.T. 9/3/98 at 39.

¶ 9 Based on the aforementioned, we conclude that the alleged after-discovered evidence would, at most, have impeached McKrell's testimony, and that McKrell's veracity was fully explored by both sides during direct and cross-examination. *See Cull, supra.* Also, the veracity of Appellant's brother's affidavit is doubtful. During trial, McKrell testified that he was afraid of Appellant's brother and that Appellant's brother hit him. As such, Appellant's brother's declaration that McKrell admitted that he lied about Appellant's involvement is untrustworthy and glaringly inconsistent with McKrell's testimony, which was given under oath. *See Commonwealth v. Williams,* 557 Pa. 207, 732 A.2d 1167 (1999) (holding that trial court judge may judge credibility of recantation where he/she also sat for the trial). Moreover, Appellant has failed to attach an affidavit from McKrell indicating that McKrell lied at trial. Based on all of the aforementioned, we conclude that it is highly unlikely that the outcome of Appellant's trial would be different if Appellant's brother were permitted to testify that McKrell "changed his story" after trial, and, therefore, a new trial/evidentiary hearing is unnecessary. *Id.*

¶ 10 Affirmed.