J-A01044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT WILLIAMS | : | |
| | : | |
| Appellant | : | No. 497 EDA 2022 |

Appeal from the PCRA Order Entered January 11, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0426231-1989

BEFORE: LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                **FILED MARCH 09, 2023**

Robert Williams appeals from the order, entered in the Court of Common Pleas of Philadelphia County, denying his petition filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After our review, we affirm.

The PCRA court summarized the underlying facts:

On March 6, 1989, [] Williams told John Morris and several other associates that he intended to rob and shoot the victim, Tyrone Sharper. Late the following night, [Williams] and [] Morris show[ed] up at 4020 Baring Street, in [] Philadelphia, Pennsylvania. Inside the third-floor apartment were Sharper, Michele Burton, Dwayne Lebby, Paul Kelly, Dennis Miller, Kenneth Burton, and others. In the kitchen, [Williams] confronted the victim at gunpoint, demanding Sharper "give that shit up." When Sharper refused, [Williams] shot him three times. [Williams] then ran out of the apartment with Morris, yelling at Sharper, "Next time, I am going to blow your brains out."

PCRA Court Opinion, 7/18/22, at 1. Two of the three gunshots struck Sharper, causing his death.

Following a three-day trial, a jury convicted Williams of second-degree murder, robbery, and possessing an instrument of crime. Williams' post-trial motions were denied and, on October 31, 1990, the Honorable William J. Manfredi sentenced Williams to a mandatory term of life in prison without parole for murder, and to concurrent terms of five to ten years' imprisonment for robbery and two and one-half to five years for the weapons offense, respectively. On appeal, this Court affirmed Williams' judgment of sentence. *Commonwealth v. Williams*, 607 A.2d 1127 (Pa. Super. 1992) (Table). Williams filed a petition for allowance of appeal, which was denied by the Pennsylvania Supreme Court on May 26, 1992. *Commonwealth v. Williams*, 608 A.2d 30 (Pa. 1992) (Table).

On December 17, 1996, Williams filed a counseled PCRA petition alleging several claims of trial counsel's ineffectiveness. Judge Manfredi reviewed the claims and denied relief without a hearing. On collateral appeal, this Court vacated Williams' judgment of sentence on the robbery charge, concluding that the offense merged with second-degree murder. The order was affirmed in all other respects. *See Commonwealth v. Williams*, 1323 PHL 1998 (Pa. Super. filed Aug. 25, 1999) (unpublished memorandum decision).

On August 8, 2000, Williams filed a *pro se* PCRA petition, which was denied. Williams filed a notice of appeal, which this Court dismissed for failure to file a brief. On August 22, 2012, Williams filed another *pro se* PCRA petition,

claiming he was entitled to relief based on **Miller v. Alabama**, 567 U.S. 460 (2012), and, on March 23, 2016, he sought leave to amend this petition. On March 8, 2018, the PCRA court dismissed this petition as Williams was over the age of eighteen at the time of his offense, and thus **Miller** did not apply.[1]

On August 20, 2019, Williams, represented by counsel,[2] filed a fourth PCRA petition. In this petition, Williams argued newly-discovered evidence renders his otherwise untimely petition timely, **see** 42 Pa.C.S.A. § 9545(b)(1)(ii), and that this evidence is exculpatory "and would have changed the outcome of the trial if it had been introduced." **See** 42 Pa.C.S.A. § 9543(a)(2)(vi).[3] Specifically, Williams alleged in his petition that two of the eyewitnesses, Michelle Burton and Paul Kelly, recanted their trial testimony

_____

[1] In **Miller**, the United States Supreme Court held that sentences of "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" **Miller**, 567 U.S. at 465. In **Montgomery v. Louisiana**, 577 U.S. 90 (2016), the High Court held that **Miller** applied retroactively. **Montgomery**, 577 U.S. at 208-13.

[2] Williams is represented by Bred D. Grote, Esquire, and Quinn Cozzens, Esquire, of the Abolitionist Law Center.

[3] To obtain relief on a substantive after-discovered evidence claim under the PCRA, a petitioner must demonstrate: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. **See**, **e.g.**, **Commonwealth v. Washington**, 927 A.2d 586 (Pa. 2007); **Commonwealth v. D'Amato**, 856 A.2d 806 (Pa. 2004). The substantive merits-based analysis is more stringent than the analysis required by the "newly-discovered facts" exception to establish jurisdiction. **See Commonwealth v. Bennett**, 930 A.2d 1264, 1271-72 (Pa. 2007).

- 3 -

with respect to Williams attempting to rob the victim. Notably, the petition does not dispute the fact that Williams fired three gunshots at victim. *See* PCRA Petition, 8/20/19, at 5-16.

The Commonwealth filed a response to Williams' petition, seeking dismissal without a hearing, and Williams filed a response to the Commonwealth's request. On December 7, 2021, the court issued notice of intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. On December 7, 2021, Williams filed a response, seeking to amend his PCRA petition. The PCRA court denied this request and, on January 11, 2022, the court dismissed Williams' PCRA petition. Williams filed this timely appeal. Both Williams and the PCRA court have complied with Pa.R.A.P. 1925.

Williams raises the following issues for our review:

1. Whether the PCRA Court erred in dismissing [] Williams' petition without an evidentiary hearing to determine whether recantation evidence from trial witness Michelle Burton met the timeliness exception at 42 Pa.C.S.[A.] § 9545(b)(1)(ii)?

2. Whether the PCRA Court abused its discretion in dismissing [] Williams' petition without an evidentiary hearing to determine whether recantation evidence from trial witness Paul Kelly met the timeliness exception at 42 Pa.C.S.[A.] § 9545(b)(1)(ii)?

3. Whether the PCRA Court abused its discretion in dismissing [] Williams' petition without an evidentiary hearing to determine whether recantation evidence from two crucial trial witnesses satisfied 42 Pa.C.S.[A.] § 9543(a)(2)(vi) and entitled [Williams] to a new trial?

4. Whether the PCRA Court abused its discretion in failing to grant [Williams] leave to amend his PCRA petition as requested in [Williams'] response to the trial court's Rule

- 4 -

907 notice of intent to dismiss?

Appellant's Brief, at 2-3.

In reviewing the PCRA court's disposition of a PCRA petition, the appellate court "must determine whether the PCRA court's ruling is supported by the record and free from legal error." *Commonwealth v. Washington*, 927 A.2d 586, 593 (Pa. 2007); *Commonwealth v. Hawkins*, 894 A.2d 716, 722 (Pa. 2006). Review of the PCRA court's decision to dismiss a petitioner's PCRA claims without holding an evidentiary hearing is reviewed under an abuse of discretion standard. *Commonwealth v. Roney*, 79 A.3d 595, 604 (Pa. 2013). A petitioner "must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Id.* (quoting *Commonwealth v. D'Amato*, 856 A.2d 806, 820 (Pa. 2004)). *See also Commonwealth v. Coursar*, 154 A.3d 287, 297 (Pa. 2017).

A PCRA petition, including a second or subsequent petition, must be filed within one year of the date that the judgment of sentence becomes final, except as otherwise provided by statute. *See* 42 Pa.C.S.A. § 9543(b)(1). "A judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Id.* at § 9545(b)(3). The PCRA timeliness requirement is mandatory and jurisdictional in nature. *Commonwealth v. Taylor*, 933 A.2d 1035,

1038 (Pa. Super. 2007). The court cannot ignore a petitioner's untimeliness and reach the merits of the petition. *Id.*

Here, Williams was sentenced on October 31, 1990. This Court affirmed his judgment of sentence on January 29, 1992, and, on May 26, 1992, the Pennsylvania Supreme Court denied allowance of appeal. Williams did not seek review in the Supreme Court of the United States. Therefore, his sentence became final ninety days later, on August 24, 1992. *See* 42 Pa.C.S.A. § 9545(b)(3) ("[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States ... or at the expiration of time for seeking the review."); U.S. Sup. Ct. R. 13(1) (petition for a writ of certiorari timely when filed within 90 days after entry of judgment). Thus, any and all timely petitions had to be filed on or before August 24, 1993.

Williams' present petition facially untimely, having been filed over twenty-four years late. However, an untimely PCRA petition may be considered timely if a petitioner alleges and proves one or more of the following: (1) governmental interference with the presentation of his claims; (2) discovery of previously unknown facts, upon which the claim is predicated, which could not have been discovered with due diligence; or (3) an after-recognized constitutional right given retroactive application. *See* 42 Pa.C.S.A. § 9545(b)(1)(i-iii). Any petition invoking one of the exceptions must be filed within one year of the date the claim could have been presented. *See id.* at

§ 9545(b)(2).[4]  The PCRA's timeliness requirements "are mandatory and jurisdictional in nature," and such requirements may not be disregarded in order to reach the merits of the claims raised.  **Commonwealth v. Murray**, 753 A.2d 201, 203 (Pa. 2000).  Further,  it is petitioner's burden to allege and prove that one of these exceptions applies.  **Commonwealth v. Albrecht**, 994 A.2d 1091, 1094 (Pa. 2010).

In his PCRA petition, Williams claims two eyewitnesses, Michele Burton and Paul Kelly, recanted their testimony that Williams expressed an intent to rob the victim.  **See PCRA** Petition, 8/20/19, at ¶5.  Williams argues Burton and Kelly "were the only prosecution witnesses who provided any testimony or evidence on a crucial aspect of [its] theory that []Williams was guilty of robbery and, therefore[,] second-degree murder[.]"  Appellant's Brief, at 7.[5]

The PCRA court concluded Williams failed to establish the timeliness exception under 42 Pa.C.S.A. § 9545(b)(1)(ii) with regard to his newly-

---

[4] On October 24, 2018, the General Assembly amended section 9545(b)(2) of the PCRA statute to expand the time for filing a petition from 60 days to one year from the date the claim could have been presented. The amendment applies only to claims arising one year before the effective date of this section, i.e., December 24, 2017, or thereafter, and thus governs the instant petition since Williams alleges his claims arose in 2018.  **See** Section 3 of Act 2018, Oct. 24, P.L. 894, No. 146, effective December 24, 2018. **See also** PCRA Petition, 8/20/19, at ¶¶ 18-19.

[5] Notably, Williams makes no argument with respect to the witnesses' testimony regarding the shooting; his challenge pertains solely to the testimony that he "was engaged in a robbery when he shot [the victim]." Appellant's Brief, at 5.

discovered fact claim. Specifically, the court found Williams did not indicate in his petition when he learned of Burton's recantation, and it was only in his Rule 907 Response that he indicated that he learned of it in September 2018. **See** PCRA Court Opinion, **supra** at 6. The court also found Williams did not meet the due diligence standard with respect to Kelly's recantation because Kelly's statement was dated August 4, 2015. **Id.** at 7. Based on our review, however, we disagree. **Washington**, **supra**.

The operative language of the newly-discovered facts exception "merely requires that the `facts' upon which the petitioner's claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." **Commonwealth v. Small**, 238 A.3d 1267, 1283 (Pa. 2020), citing 42 Pa.C.S.A. § 9545(b)(1)(ii). "This language plainly calls for a circumstance-dependent analysis of the petitioner's knowledge[.]" **Small**, **supra** at 1283. As the **Small** Court noted, due diligence "is a flexible concept that varies with the context of a given case[.]" **Id.** at 1284. One of the variables we consider in this equation is Williams' status—he has been incarcerated since 1990 and has proceeded almost entirely *pro se* prior to the filing of the instant petition.

We accept counsel's averments that Burton's and Kelly's recantation statements were discovered in September 2018 and October 2018,

respectively. *See* PCRA Petition, *supra* at ¶¶ 18-19.[6] *See also* Petitioner's

Response to Rule 907 Notice of Intent to Dismiss, 12/7/21, at 16-17. Williams

avers in his petition that eyewitness Burton's statements, made on September

5, 2018 to an investigator working on behalf of Williams' counsel,

"contradicted her testimony at trial, provided previously unknown reasons for

her making inaccurate statements to police and in trial testimony, and

indicated she was previously unwilling to discuss her testimony or [the] case,"

and thus, "these statements could not have been ascertained earlier through

the exercise of due diligence." PCRA Petition, *supra* at ¶ 18. Williams also

avers that eyewitness Kelly's notarized statement, though dated August 4,

2015, was not discovered by counsel until October 2018, that Williams "was

previously unaware that [] Kelly had written a notarized statement[,]" the

statement contradicted Kelly's trial testimony, the statement and other

documents were provided to counsel by one of Williams' family members, and

_____

[6] Counsel included in the PCRA petition two witness certificates. Counsel certifies that eyewitness Burton would testify at an evidentiary hearing that her prior testimony at trial was incorrect, that at no time did Williams inform her the night before the shooting that he intended to rob the victim, that she shared this information with a paralegal from the Abolitionist Law Center on September 5, 2018, and that she shared it with counsel on October 10, 2018. Burton refused to sign an affidavit in advance of her testimony. *See* Burton Witness Certificate, 8/20/19. Counsel also certifies that eyewitness Kelly would testify that his trial testimony was incorrect, that he was pressured by police and the prosecution, that it was a conflict over Burton, not a robbery, that caused the conflict between Williams and the victim, and that Kelly signed a notarized statement in 2015, which was attached to the PCRA petition. Counsel certified, however, that since learning of the notarized statement in October 2018, counsel has been unable to contact Kelly. *See* Kelly Witness Certificate, 8/20/19.

Williams "did not have access to the documents in his family member's possession [and] could not have discovered [] Kelly's recantation sooner through the exercise of due diligence." *Id.* at ¶ 19.

Based on the foregoing, we find Williams has sufficiently pled and proven the newly-discovered facts exception to the PCRA's one-year time bar, rendering his petition, filed on August 20, 2019, timely.[7] *See* 42 Pa.C.S.A. § 9545(b)(1)(ii); *see also Commonwealth v. Cox*, 146 A.3d 221, 230 (Pa. 2016) (due diligence "does not require perfect vigilance and punctilious care, but merely a showing the party has put forth reasonable effort to obtain the information upon which a claim is based."); *Commonwealth v. Brensinger*, 218 A.3d 440, 448-49 (Pa. Super. 2019) (en banc) (same); *cf. Commonwealth v. Diggs*, 220 A.3d 1112, 1116, 1118-19 (Pa. Super. 2019) (newly-discovered-fact exception applied to PCRA claim that witness recanted testimony where witness signed affidavit recanting testimony one month before defendant filed PCRA petition asserting claim based on that recantation). Nonetheless, we conclude no relief is due.

In order to obtain relief on a substantive after-discovered evidence claim, a petitioner must demonstrate that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not

---

[7] Based on this determination, we need not address Williams' fourth issue claiming the PCRA court abused its discretion in failing to grant him leave amend his petition in response to the court's Rule 907 notice of intent to dismiss.

being used solely to impeach credibility; and (4) it would likely compel a different verdict. ***Commonwealth v. Washington***, 927 A.2d 586 (Pa. 2007). As noted above, ***see supra*** n.2, the substantive merits-based analysis is more demanding than the analysis required by the "newly-discovered fact" exception to establish jurisdiction. ***See Bennett***, ***supra*** at 1264. ***See also Diggs***, ***supra*** at 1117.

Here, Williams has failed to plead and prove by a preponderance of the evidence that the after-discovered evidence that has subsequently become available "would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). A key element of an after-discovered evidence claim is that the evidence would "likely result in a different verdict if a new trial were granted." ***Commonwealth v. Pagan***, 950 A.2d 270, 292 (Pa. 2008). Such is not the case here. Two other eyewitnesses, Dwayne Lebby and Dennis Miller, also testified at trial, supporting the finding that Williams intended to rob the victim prior to the shooting. Thus, it is highly unlikely the recantations would have compelled a different result at trial.

At trial, Lebby testified that Williams demanded the victim "give [him] some money." N.T. Trial Vol. I, 4/20/1989, at 69. Lebby also testified that when the victim denied having money, Williams shot the victim and then told him to remove two gold rings he was wearing and, when the victim refused, Williams fired two more shots at the victim and then fled. ***Id.*** at 68-71. On cross-examination, Lebby acknowledged that Williams did not say "money" or

"rings," but something like "give me your shit," which Lebby understood to mean the victim's personal property. *Id.* at 82-83, 89, 97-98. Miller testified that when Williams shot the victim, he heard Williams, saying "stick up," and the victim saying he was "not giving up nothing." *Id.* Vol. III, at 28, 30. He also testified that the victim was wearing two rings. *Id.* at 28. Notably, although Burton's recantation disavowed her statement that Williams told her the night before the shooting that he planned to rob the victim, her recantation did not disturb her testimony that on the day of the shooting she heard Williams say, "Give it up," right before he shot the victim. *Id.* Vol. I, at 109, 125. Furthermore, Lebby's and Miller's testimony, as well as Burton's, all indicated that Williams intended to rob the victim when he was in the kitchen, and, as the Commonwealth points out, the jury did not need to rely on "reported conversations prior to the shooting because it received ample and consistent testimony about how [Williams] openly declared his attempt to rob [the victim.]" *See* Commonwealth's Brief, at 16. Consequently, the recantations would "not compromise the jury's ability to find that [Williams] attempted to rob [the victim]." *Id.* at 17. In other words, it is unlikely the jury's verdict turned on Burton's testimony regarding her conversation with Williams the night before the shooting.

We conclude, therefore, that Williams has failed to show by a preponderance of the evidence that Burton's and Kelly's recantation evidence would have altered the outcome of the trial. *See Pagen*, *supra*; *Commonwealth v. Detman*, 770 A.2d 359, 361 (Pa. Super. 2001)

(concluding after-discovered recantation testimony unlikely to change outcome of prior trial, where recantation would have "at most" impeached witness' trial testimony and both sides fully explored witness' veracity during direct and cross examination). ***See also Commonwealth v. D'Amato***, 856 A.2d 806, 825 (Pa. 2004) ("[A]s a general matter, recantation evidence is notoriously unreliable, particularly where the witness claims to have committed perjury.").

Accordingly, Williams is not entitled to relief on his after-discovered evidence claim.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *3/9/2023*